UNITED STATES BANKRUPTCY COURT

WESTERN DISTRICT OF WISCONSIN

---

| | |
|---|---|
| In re: | Case Number: 13-10813-7 |
| STANLEY G. YERGES, | |
| Debtor. | |
| | |
| H. BROOKS AND COMPANY, LLC, | |
| Plaintiff, | |
| | Adversary Number: 13-105 |
| v. | |
| STANLEY G. YERGES, | |
| Defendant. | |

---

# DECISION ON SUMMARY JUDGMENT

## FACTUAL AND PROCEDURAL HISTORY

The Plaintiff, H. Brooks and Company, LLC, is a produce company headquartered in New Brighton, Minnesota. At all times relevant to the present proceeding, the Plaintiff was engaged in the business of selling perishable agricultural commodities to merchants, dealers, and retailers and held a valid Perishable Agricultural Commodities Act ("PACA") license issued by the United States Department of Agriculture.

The Debtor and Defendant in this adversary proceeding, Stanley G. Yerges, was the owner, operator, and sole shareholder of The Red Onion, LLC, ("Red Onion") a now-defunct grocery store in De Forest, Wisconsin. Red Onion

held a valid PACA license and was subject to PACA as a commission merchant, dealer, and/or retailer.

Between May 7, 2011, and September 7, 2011, the Plaintiff sold and shipped perishable agricultural commodities to Red Onion at Red Onion's request. On a weekly basis between May 18, 2011 and September 7, 2011, the Plaintiff forwarded, and Red Onion received, invoices for the shipments. Each invoice included the statutorily-required language preserving its PACA trust interests in inventory and sales proceeds pursuant to 7 U.S.C. § 499e(c)(4). Red Onion never objected to any of the invoices at any time prior to the Plaintiff's lawsuit. After taking into account all credits, the Plaintiff's outstanding invoices to Red Onion total $56,961.59.

The Plaintiff sued Red Onion and the Defendant in district court in the Western District of Wisconsin. On September 5, 2013, Judge Conley issued an Opinion and Order granting the Plaintiff's motion for partial summary judgment. *H. Brooks & Co. v. Red Onion, LLC*, No. 12-cv-455-wmc, 2013 WL 4776503 (W.D. Wis. Sept. 5, 2013) (*"Brooks I"*). Relevant to the present adversary proceeding, *Brooks I* granted summary judgment in the Plaintiff's favor on its claim against Red Onion for violation of PACA. *Id.* at *3. *Brooks I* conclusively determined that Red Onion had "(1) not paid any portion of the [balances on the outstanding invoices], (2) ceased operations as a going concern, (3) liquidated all of its inventory, and (4) paid the proceeds from the liquidation to its primary lender, the Small Business Association." *Id.* at *1. In

so finding, the court concluded that Red Onion had violated its PACA trust obligations to the Plaintiff. *Id.* at *3. However, *Brooks I* made no findings with respect to the Defendant individually and, evidently as a result of the Defendant's pending bankruptcy proceeding, dismissed the claims against the Defendant without prejudice. *Id.* at *3.

The Defendant voluntarily filed bankruptcy under Chapter 7 on February 26, 2013. On June 7, 2013, the Plaintiff filed the pending adversary proceeding to except the PACA debt from discharge under 11 U.S.C. § 523(a)(4). The Defendant received a discharge on September 27, 2013, but the discharge order did "not affect any pending adversary proceeding to determine dischargeability."

The Defendant filed a motion to dismiss the adversary proceeding, which was denied on December 17, 2013. In its decision, this Court found that "for the purposes of the motion, it is undisputed that the Defendant was the sole person in control of The Red Onion." *H. Brooks & Co. v. Yerges (In re Yerges)*, Ch. 7 Case No. 13-10813-7, Adv. No. 13-105, 2013 WL 6665729, at *3 (Bankr. W.D. Wis. Dec. 17, 2013) (*"Brooks II"*). The Court also found that "[a]s such, the Defendant may be held personally liable for amounts owed to the [the Plaintiff] from the PACA trust assets and the failure to preserve or satisfy the obligations." *Id.*

## ARGUMENTS

After this Court issued *Brooks II*, the Plaintiff filed a motion for summary judgment. The Plaintiff argues summary judgment is appropriate because there is no dispute: (1) that Red Onion failed to pay the Plaintiff for the shipments of perishable agricultural commodities, (2) that the Defendant is personally liable for the debt, and (3) that the Defendant's personal liability for the debt is nondischargeable under 11 U.S.C. § 523(a)(4).

The Defendant's response to the Plaintiff's motion for summary judgment asserts there is a factual dispute as to: (1) the Defendant's personal liability for Red Onion's debt to the Plaintiff, and (2) the dischargeability of the debt. With respect to the question of his personal liability, the Defendant asserts there is a factual issue concerning whether or not he exerted the requisite control over the PACA trust assets to be held personally liable for the obligation. As to the dischargeability of the debt, the Defendant argues that even if he is personally liable, his conduct did not constitute "defalcation" within the meaning of section 523(a)(4) as that term was interpreted by the United States Supreme Court in *Bullock v. BankChampaign, N.A.*, __ U.S. __, 133 S. Ct. 1754, 185 L. Ed. 2d 922 (2013).

The Plaintiff filed a reply brief in which it asserts that, because the underlying PACA claim is a statutory trust claim, *Bullock* does not apply to the Defendant's conduct.

## LEGAL STANDARDS

### Summary Judgment Standard

Federal Rule of Civil Procedure 56 applies in bankruptcy through Bankruptcy Rule 7056. It states that summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Thus, summary judgment is appropriate when all that remains to be decided in a case is an issue of law. 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2725 (3d ed. 1998). This is true when the parties agree on the facts, when the truth is clear, or when the moving party clearly demonstrates a right to judgment and that the opposing party cannot possibly prevail. *Id.* It is also true when the dispute only concerns facts that are not material to the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986); *Donald v. Polk Cnty.*, 836 F.2d 376, 379 (7th Cir. 1988); *Wallace v. Greer*, 821 F.2d 1274, 1276 (7th Cir. 1987). In deciding a motion for summary judgment, the Court views all facts and draws all inferences in the light most favorable to the non-moving party. *Schuster v. Lucent Techs., Inc.*, 327 F.3d 569, 573 (7th Cir. 2003).

### PACA

"PACA comprehensively regulates the nation's produce industry . . . . Among its many provisions, PACA provides that perishable agricultural

commodities received by a licensed dealer, as well as the proceeds from sales of those commodities, are held in trust for the benefit of unpaid suppliers until full payment has been made." *Patterson Frozen Foods, Inc. v. Crown Foods Int'l, Inc.*, 307 F.3d 666, 669 (7th Cir. 2002). "PACA trust rights take priority over the interests of all other creditors, including secured creditors." *Id.* (citing *C.H. Robinson Co. v. Trust Co. Bank, N.A.*, 952 F.2d 1311, 1315 (11th Cir. 1992)). These rights may be enforced against both the trustee corporation and the corporation's controlling officers. *Id.* (citing *Golman-Hayden Co. v. Fresh Source Produce, Inc.*, 217 F.3d 348, 351 (5th Cir. 2000)). An individual in a corporation who is in a position to control trust assets and who does not preserve them for the beneficiaries of the trust has breached a fiduciary duty and is personally liable. *Morris Okun, Inc. v. Harry Zimmerman, Inc.*, 814 F. Supp. 346, 348 (S.D.N.Y. 1993); *see also Bear Mountain Orchards, Inc. v. Mich-Kim, Inc.*, 623 F.3d 163, 169 (3d Cir. 2010).

Whether an individual was in a position to control PACA trust assets is a fact-intensive question that requires courts to:

> 1) determine whether an individual holds a position that suggests a possible fiduciary duty to preserve the PACA trust assets (e.g., officer, director, and/or controlling shareholder); and 2) assess whether that individual's involvement with the corporation establishes that she was actually able to control the PACA trust assets at issue. The ability to control is core. A formal title alone is insufficient—especially when faced with a small, "mom and pop" corporation . . . where formalities may be less meaningful.

*Bear Mountain Orchards, Inc.*, 623 F.3d at 172 (3d Cir. 2010). *See also Royal Marketing, LLC v. Paxson (In re Paxson),* Ch. 13 Case No. 13-10817, Adv. No.

13-0121, 2013 WL 2180144, at *2 (Bankr. E.D. Pa. May 17, 2013) (citations omitted); *Capital Produce, Inc. v. Reinert (In re Reinert)*, Ch. 13 Case No. 11-22840, Adv. No. 11-02465, 2012 WL 6719569, at *3 (Bankr. W.D. Pa. 2012) (citations omitted).

### **11 U.S.C. § 523(a)(4)**

Section 523(a)(4) provides that debts for "fraud or defalcation while acting in a fiduciary capacity" are nondischargeable. To except a debt from discharge under section 523(a)(4), therefore, the statute requires that the plaintiff demonstrate (1) the existence of a fiduciary relationship between the parties at the time the debt was incurred, and (2) that the debt was created by fraud or defalcation. *Follett Higher Educ. Group, Inc. v. Berman (In re Berman)*, 629 F.3d 761, 765-66 (7th Cir. 2011). The determination of fiduciary capacity for purposes of the bankruptcy code is a question of federal law. *O'Shea v. Frain (In re Frain)*, 230 F.3d 1014, 1017 (7th Cir. 2000). "The majority of courts . . . have held that the trust imposed by Congress under PACA constitutes a technical trust which gives rise to the requisite fiduciary capacity for purposes of § 523(a)(4)." *Quality Food Prods., Inc. v. Bolanos*, No. 12-CV-7654, 2013 WL 7507846, at *2 (N.D. Ill. Sept. 16, 2013) (citing *E. Armata, Inc. v. Parra (In re Parra)*, 412 B.R. 99, 104 (Bankr. E.D.N.Y. 2009); *A.J. Rinella & Co. v. Bartlett (In re Bartlett)*, 397 B.R. 610, 620 (Bankr. D. Mass. 2008); *KGB Int'l, Inc. v. Watford (In re Watford)*, 374 B.R. 184, 190-191 (Bankr. M.D.N.C. 2007); *Strube Celery & Vegetable Co. v. Zois (In re Zois)*, 201 B.R. 501, 507 (Bankr. N.D. Ill. 1996); *N.P.

*Deoudes, Inc. v. Snyder (In re Snyder),* 184 B.R. 473, 475 (D. Md. 1995); *Nuchief Sales, Inc. v. Harper (In re Harper),* 150 B.R. 416, 418-419 (Bankr. E.D. Tenn. 1993)). Indeed, this Court reached that very conclusion in its decision denying the Defendant's motion to dismiss.

In the context of section 523(a)(4), the term "fraud" means "positive fraud, or fraud in fact, involving moral turpitude or intentional wrong . . . and not implied fraud, or fraud in law, which may exist without the imputation of bad faith or immorality." *Bullock*, 133 S. Ct. at 1759, 185 L. Ed. 2d 922 (quoting *Neal v. Clark*, 95 U.S. 704, 709, 24 L. Ed. 586 (1877)).

In *Bullock*, the United States Supreme Court held that the term "defalcation" is treated similarly to "fraud" for purposes of section 523(a)(4). *Id.* The Court ruled that defalcation "includes a culpable state of mind requirement akin to that which accompanies application of the other terms in the same statutory phrase. We describe that state of mind as one involving knowledge of, or gross recklessness in respect to, the improper nature of the relevant fiduciary behavior." *Id.* at 1757, 185 L. Ed. 2d 922. "Thus, where the conduct at issue does not involve bad faith, moral turpitude, or other immoral conduct, the term requires an intentional wrong." *Id.* at 1759, 185 L. Ed. 2d 922. This includes "not only conduct that the fiduciary knows is improper but also reckless conduct of the kind that the criminal law often treats as the equivalent." *Id.* "Where actual knowledge of wrongdoing is lacking," conduct is considered equivalent "if the fiduciary 'consciously disregards' (or is willfully

blind to) 'a substantial and unjustifiable risk' that his conduct will turn out to violate a fiduciary duty." *Id.* (citations omitted). "That risk 'must be of such a nature and degree that, considering the nature and purpose of the actor's conduct and the circumstances known to him, its disregard involves a *gross deviation* from the standard of conduct that a law-abiding person would observe in the actor's situation.'" *Id.* at 1760, 185 L. Ed. 2d 922 (citations omitted) (emphasis in original).

## DISCUSSION

As an initial matter, in light of the parties' fairly lengthy litigation history, it is worth clarifying that only two issues remain undecided: (1) whether the Defendant is personally liable; and (2) whether the Defendant's conduct amounted to "defalcation" for purposes of section 523(a)(4).

### The Defendant's Personal Liability

Although this Court indicated in *Brooks II* that "for the purposes of the motion [to dismiss]" it appeared the Defendant was "the sole person in control of The Red Onion," the centrality of this issue to the resolution of the Plaintiff's motion for summary judgment merits an explication of the reasons that compel that conclusion.

As noted above, a controlling person in a corporation that is a PACA trustee may be held personally liable for the dissipation of PACA trust assets. It has already been determined that Red Onion was a PACA trustee and that $56,961.59 in PACA trust assets were dissipated. Thus, the remaining question

is whether the Defendant was a controlling person. This inquiry focuses on two factors: (1) whether an individual holds a position that suggests a possible fiduciary duty to preserve the PACA trust assets (e.g., officer, director, and/or controlling shareholder); and (2) whether that individual's involvement with the corporation establishes that he or she was actually able to control the PACA trust assets at issue. *Bear Mountain Orchards, Inc.*, 623 F.3d at 172 (3d Cir. 2010).

The facts that have been submitted in the pleadings and the affidavits establish that the first factor of the inquiry set forth in *Bear Mountain Orchards* is satisfied. In the Joint Pretrial Statement, the Defendant agreed that he was the "owner, operator and only member" of Red Onion, as well as its sole shareholder. There is no genuine dispute that as the owner and operator, the Defendant held a position "that suggests a possible fiduciary duty to preserve the PACA trust assets."

Likewise, the facts indicate beyond much doubt that the Defendant's role as owner, operator, and sole shareholder entailed an actual ability to control the PACA trust assets. Indeed, it appears the Defendant had the ability to control all of Red Onion's assets, including the PACA trust assets. The Defendant admits that "as the sole shareholder of Red Onion, [he] was in control of Red Onion at all times herein." He also admits that he "reasonably and satisfactorily maintained business records, including the accounts receivable."

Furthermore, in an affidavit, he represents that "[w]hen Red Onion began to fail and could not pay its bills, I decided to close the store and met with" a vice-president of National Exchange Bank, his largest and "only secured creditor." Pursuant to a liquidation plan drawn up by National Exchange Bank, he transferred "all of Red Onion's assets to National Exchange Bank" because he "believed that Red Onion legally had a duty to pay National Exchange Bank prior to paying any other creditor." He "did not believe that [the] liquidation plan allowed Red Onion to make payments to other creditors."

These admissions demonstrate the Defendant's actual ability to control PACA trust assets because they show he had the actual ability to control all of Red Onion's assets. Moreover, they demonstrate he exercised that ability when he implemented the liquidation plan and transferred all of Red Onion's assets, which necessarily would have included the PACA trust assets, to National Exchange Bank.

In defense, the Defendant asserts that other employees had responsibilities at Red Onion including managing the company's bills, writing and depositing checks on the store's behalf, and controlling the various departments within the grocery store. He also notes that "[a]ll of Red Onion's employees were involved in the day-to-day operations of Red Onion." *Id.* These arguments are unavailing because they merely establish the possibility that the Defendant was not the only controlling person at Red Onion. As evidenced by his central role in the liquidation of Red Onion, the fact that other individuals

may have had control of PACA trust assets does not diminish the Defendant's ability to control PACA trust assets as the owner, operator, and sole shareholder.

While a formal title alone is insufficient to establish control, the facts make clear that the Defendant not only was in a position that "suggests a possible fiduciary duty to preserve the PACA trust assets," his central role in the winding down of Red Onion establishes that he was "actually able to control the PACA trust assets at issue." As such, the Defendant was a controlling person of Red Onion for purposes of PACA, and is personally liable for the dissipation of the PACA trust assets as a result.

### Defalcation Under Section 523(a)(4)

In *Brooks II,* this Court ruled in accordance with a majority of courts that a PACA trust imposes fiduciary duties within the meaning of 11 U.S.C. § 523(a)(4). In light of that decision, the remaining question is whether the debt was created as a result of "fraud or defalcation" as those terms are used in the Code.

The Plaintiff apparently does not dispute that the Defendant did not commit fraud for purposes of section 523(a)(4). Instead, the crux of the claim is the interpretation of the term "defalcation" in the context of fiduciary duties arising under a PACA trust. As noted above, in *Bullock*, the Supreme Court recently interpreted defalcation in the context of section 523(a)(4), holding that defalcation "includes a culpable state of mind . . . involving knowledge of, or

gross recklessness in respect to, the improper nature of the relevant fiduciary behavior." 133 S. Ct. at 1757, 185 L. Ed. 2d 922.

The parties dispute whether *Bullock*'s interpretation of "defalcation" applies to fiduciaries of a PACA trust. The Plaintiff argues that the reasoning in *Bullock* cannot apply to violations of PACA because PACA is a statutory trust to which common law trust principles do not apply. It contends that because *Bullock* was decided in the context of a common law trust, its holding is limited to breaches of common law fiduciary duties and does not apply to breaches of fiduciary duties that are established by statute. Further, it argues that, notwithstanding the *Bullock* decision, any breach of a fiduciary duty imposed by PACA constitutes per se defalcation within the meaning of section 523(a)(4).

The Defendant argues that *Bullock* applies to the present case because the issue of his personal liability is governed by common law trust principles, not by PACA. He points out that common law trust principles do not apply to statutory trusts if they conflict with the language of the statute, but that PACA itself is not the basis for personal liability for the breach of a fiduciary duty imposed by PACA. Instead, he asserts that individual liability under PACA is based upon common law breach of trust principles like those at issue in *Bullock*. As such, he argues, *Bullock*'s heightened standard of intent should apply. He contends that, on the present facts, the Plaintiff is unable to establish the requisite level of culpability, so summary judgment should be denied.

It is true that *Bullock* involved a trust created at state law subject to common law trust principles. *See Bullock*, 133 S. Ct. at 1757, 185 L. Ed. 2d 922. However, the Supreme Court's analysis was not concerned with what fiduciary duties were applicable to the trust at issue. *See id.* Instead, accepting as true the fact of a breach of the relevant fiduciary duties, the *Bullock* court set out to determine whether the debtor's conduct in the violation of those fiduciary duties rose to the level of "defalcation" as that term is used in 11 U.S.C. § 523(a)(4). *Id.* As such, the focus of the decision was on the character of the debtor's behavior in the course of committing a breach, not on the standard required for the breach itself. Indeed, there is virtually no analysis or description of the fiduciary duties that were breached in *Bullock*. *See id.* The entire decision is devoted to the various competing definitions of "defalcation" as that term has been used in the bankruptcy context since the mid-nineteenth century. In other words, the holding in *Bullock* concerns neither statutory trust principles nor common law trust principles, but rather an interpretation of a term that appears in the Bankruptcy Code. *Id.*

Based on this understanding of the holding in *Bullock*, it is clear that for purposes of a nondischargeability proceeding, it is irrelevant whether the Defendant's fiduciary duties were created by PACA or by common law trust principles. Section 523(a)(4) excepts from discharge debts for "fraud or defalcation in a fiduciary capacity." This Court has previously concluded that, in accordance with a majority of courts that have addressed the question, the

PACA trust imposes fiduciary duties within the meaning of section 523(a)(4). Based on the facts presented in support and in opposition to the motion for summary judgment, the Court concludes that the Defendant faces personal liability for the breach of those fiduciary duties. As a result, the only question is whether the breach amounted to "defalcation" as defined in *Bullock*.

On the facts available, it is not possible to conclude whether or not the Defendant had knowledge of, or acted with gross recklessness in respect to, the improper nature of the behavior that resulted in a breach of his fiduciary duties. In light of *Bullock*, it is clear that the Plaintiff's position, that any breach of a PACA-related fiduciary duty is per se defalcation for purposes of section 523(a)(4), is incorrect. While it is clear that there was a breach of fiduciary duties here, it is not clear whether the Defendant's conduct vis-à-vis the breach satisfies *Bullock*. As a result, there remain genuine issues of material fact that merit trial. Accordingly, the Plaintiff's motion for summary judgment is DENIED.

This decision shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and Rule 52 of the Federal Rules of Civil Procedure.

Dated: May 6, 2014

BY THE COURT:

_____
Hon. Catherine J. Furay
U.S. Bankruptcy Judge